# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00724-CV

**David Henric, Cecilia Walters, and Wilton Cox, Appellants**

**v.**

**Branden Glover and Cavalry Solar Solutions, LLC d/b/a Apollo Energy, Appellees**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D–1–GN–22–005581, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

This is an accelerated interlocutory appeal from the granting of a temporary injunction against David Henric, Cecilia Walters, and Wilton Cox (collectively, Appellants) in favor of Branden Glover (Glover) and Cavalry Solar Solutions, LLC d/b/a Apollo (Cavalry). *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4). After conducting an evidentiary hearing, the trial court entered a temporary injunction that prohibits Appellants from (1) holding themselves out as employees, officers, members, managers, or agents of Cavalry; (2) taking any action purported to be on Cavalry's behalf; (3) excluding or limiting Glover's access to or participation in Cavalry meetings, documents, or data; (4) taking any action inconsistent with Glover's management authority over Cavalry; (5) distributing, removing, spending, relocating, or moving any Cavalry cash or property; and (6) selling, conveying, disposing, encumbering or otherwise alienating any Cavalry assets. The temporary injunction also prohibits Henric and Walters from assisting any individuals or entities that compete with Cavalry's business; disclosing Cavalry's financial

information, customer lists, sales strategies or business plans; interfering with Cavalry's relationships with its employees, contractors, customers or suppliers; using the name "Apollo," "Apollo NRG," or similar trade names, trademarks, or website domain names that are likely to cause confusion or mistake as to an affiliation with Cavalry, which does business as Apollo Energy; and taking action likely to injure Cavalry's reputation or its trade name, Apollo Energy. In three issues, Appellants contend that the trial court abused its discretion by granting a temporary injunction because (1) the trial court did not provide Appellants with an adequate opportunity to present evidence at the hearing, (2) the temporary injunction does not comply with the requirements of Texas Rules of Civil Procedure 682, 683, and 684, and (3) the temporary injunction exceeds the relief requested by Glover and Cavalry. We will dissolve the temporary injunction and remand the case to the trial court for further proceedings.

## BACKGROUND[1]

Cavalry was formed in 2017 as a single-member, manager-managed limited liability company. Henric served as Cavalry's sole member and owned 100% of the membership interests. Henric and Walters were designated in Cavalry's Certificate of Formation as its managers. In February 2022, Henric and Glover entered into a Business Acquisition Agreement (the BAA) whereby Glover purchased 100% of the membership interest in Cavalry. The BAA identifies Walters as a "Key Officer" and was executed by Glover individually, Henric individually and in his capacity as Cavalry's sole member and manager, and by Walters individually. The BAA provided that Henric and Walters both resigned as managers of Cavalry

---

[1] The factual recitation is stated in the light favoring the trial court's ruling, with conflicts in the parties' evidence resolved in support of the ruling. *See T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 21 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).

2

and that Henric withdrew as the sole member. As of the effective date of the BAA, Glover became Cavalry's sole member and manager.

The BAA contains both covenants against competition and confidentiality provisions. The covenants against competition prohibit Henric and Walters for a period of five years from "directly or indirectly provid[ing] services as an employee or contractor, or assist[ing] in any other capacity whatsoever, including as an owner, investor, lender, partner, director, consultant, or agent, to any individual or entity engaged or contemplating becoming engaged in a business competitive with the Business in any geographic region where Cavalry currently or later operates." They also prohibit Henric and Walters from "caus[ing] or encourag[ing] any actual or prospective employee, independent contractor, customer, or supplier of Cavalry [] to terminate that relationship or take any action that may adversely impact it, including hiring or attempting to hire any actual or prospective employee of Cavalry." The confidentiality provision provides that Henric and Walter "shall hold in confidence and carefully protect all information, whether written or oral, concerning Cavalry [] that should reasonably be considered confidential or proprietary, including Cavalry's financial condition and results and the identities of independent contractors and customers."

After acquiring Cavalry, Glover executed a Company Operating Agreement (the Company Agreement) that designated Glover as Cavalry's sole member and manager. As Cavalry's manager, Glover appointed himself as Cavalry's Chief Executive Officer. Since the effective date of the BAA, no other individuals or entities have been appointed as Cavalry's managers, no other individuals or entities have invested additional capital into Cavalry, no new members have been admitted to the company, and no board of directors, board of managers, or

officers have been appointed. There have been no meetings of the managers, meetings of the members, or written consents in lieu of meetings.

Since its effective date and in accordance with the BAA's terms, Henric and Walters performed consulting services for Cavalry as independent contractors. Additionally, Cox worked for Cavalry as an independent contractor. In connection with his work for Cavalry, Cox signed a Non-Compete Agreement that included a covenant against competition, a non-solicitation agreement, and a confidentiality agreement. The covenant against competition prohibited Cox from "provid[ing] services or engag[ing] in any aspects of business that would be deemed similar in nature to the business of Cavalry Solar Solutions and Apollo" for the duration of the agreement and for a period of 18 months following termination of the agreement. The non-solicitation provision prohibited Cox from "attempt[ing] [] to induce [Cavalry's] employees to leave [Cavalry's] workforce" and from "interfering with [Calvary's] relationship with its employees." The confidentiality provision prohibited Cox from disclosing "any and all technical and non-technical information provided by [Cavalry], including but not limited to, any data, files, reports, accounts, or any proprietary information in any way related to products, services, processes, database, plans, methods, research, development, programs, software, authorship, customer lists, vendor lists, suppliers, marketing or advertising plans, methods, reports, analysis, financial or statistical information, and any other material related or pertaining to" any of Cavalry's business.

In October 2022, Henric, Walters, and Cox, purporting to act as Cavalry's board, claimed to terminate Glover as Cavalry's Chief Executive Officer. Walters instructed her assistant to cut off Glover's access to his Cavalry company email account. Henric applied for a new Tax Identification Number for Cavalry, listing himself as the sole member of the company,

4

and payments to Cavalry were directed to a bank account to which Glover did not have access. In response to these actions, Glover terminated Henric's, Walters', and Cox's employment with Cavalry. On October 11, 2022, Glover sued Appellants seeking declaratory and injunctive relief and asserting a cause of action for breach of contract. On October 14th, the trial court signed a temporary restraining order, prohibiting Appellants from, among other things, holding themselves out as Cavalry's employees or agents; taking any action on Cavalry's behalf; or removing, spending or relocating Cavalry's cash or property. The trial court also ordered Henric and Walters to return all Cavalry funds to an account to which Glover had access and to restore Glover's email account. The trial court set the hearing on the temporary injunction for October 24th.

The trial court held the temporary injunction hearing on October 24th from 9:00 a.m. until 11:45 a.m., taking a fifteen-minute recess. During the hearing, Glover's counsel called two witnesses, Glover and Phil Garcia, Cavalry's sales director/manager. Counsel for Appellants had cross-examined Garcia and was cross-examining Glover when, at 11:34 a.m. the trial court informed him that he needed to "wrap it up in the next few questions" because "11:30 is the time I really need to stop." At 11:40 the following colloquy took place:

> The Court: Okay. It's 11:40, Mr. Cartwright.[2]
>
> Mr. Cartwright: Judge, I would like to continue this and I would also like to—I would also like the opportunity to have my witnesses, the defendants in this particular matter, direct and cross-examined. We've been given no opportunity to do that.
>
> The Court: Mr. Rosenthal, any response?[3]

---

[2] Mr. Cartwright was representing Henric, Walters, and Cox at the hearing.

[3] Mr. Rosenthal was representing Glover at the hearing.

5

Mr. Rosenthal:      Well, we set this for three hours because [the court administrator] told me that we wouldn't get reached on a nine-hour docket today, so we had to get this done before the TRO expired. He knew it. He didn't—that notice was sent last week so he knew how long we had and he didn't ask for more time.

Mr. Cartwright:      Your honor, respectfully, what I didn't know, and the Court has the most accurate record of the time—what I didn't know is exactly how long Mr. Glover would be directed. That was a factor that was not considered in this.

The Court:      Okay. So the Court has broad discretion to limit the time as appropriate for hearings such as this. And I made it very clear up front that we had a time limitation and now you-all have gone past my limitations, which I feel is fairly disrespectful. And in any case, the applicant has already met the burden of proof necessary for the Court to grant the temporary injunction, so that is what I will do.

The trial court then asked the parties to confer about the form of the proposed injunction submitted to the court and advised the parties that, if no agreement could be reached about the form, the trial court would "make a decision on" the form of the injunction. The trial court then adjourned the hearing. The court signed the temporary injunction on October 25th. Henric, Walters, and Cox filed a motion to dissolve the temporary injunction asserting, in part, that the injunction was issued without allowing them to call witnesses in violation of their right, pursuant to Texas Rule of Civil Procedure 681, to present their defense. *See* Tex. Rule Civ. P. 681. Henric, Walters, and Cox also brought this interlocutory appeal seeking to set aside the temporary injunction.

## DISCUSSION

In their first issue, Appellants contend that the trial court abused its discretion by refusing to hear their case in chief and, instead, ending the hearing and granting injunctive relief without allowing Appellants to fully cross-examine Glover or present any of their witnesses and evidence. Rule 681 provides that "[n]o temporary injunction shall be issued without notice to the

6

adverse party." *Id.*. The notice requirement of Rule 681 "implicitly requires that a party must be afforded an adequate opportunity to be heard." *Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 396 (Tex. App.—Austin 2000, no pet.) (citing *City of Austin v. Texas Pub. Emps. Ass'n*, 528 S.W.2d 637, 640 (Tex. App.—Austin 1975, no writ)). "A party must be given an opportunity to fully litigate the issue before the court grants the injunction." *Id.* (citing *Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 836 (Tex. App.—Austin 1984, no writ)). The opportunity to be heard and present evidence must amount to more than the mere opportunity to cross-examine the other party's witnesses. *See RRE VIP Borrower, LLC v. Leisure Life Senior Apartment Hous., Ltd.*, No 14-09-00923-CV, 2011 WL 1643275, at *2 (Tex. App.—Houston [14th Dist.] May 3, 2011 no pet.) (mem. op.); *Elliott v. Lewis*, 792 S.W.2d 853, 855 (Tex. App.—Dallas 1990, no writ); *Reading & Bates Constr. Co. v. O'Donnell*, 627 S.W.2d 239, 244 (Tex. App.—Corpus Christi-Edinburg 1982, writ ref'd n.r.e.).

In a temporary injunction hearing, the trial court is entitled to reasonably limit the proceedings. *See Elliott*, 792 S.W.2d at 855; *Reading & Bates Constr. Co.*, 627 S.W.2d at 244; *City of Houston v. Houston Lighting & Power Co.*, 530 S.W. 2d 866, 869 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.). However, the trial court may not deprive a party of its right to offer any evidence at all. *See RRE VIP Borrower*, 2011 WL 1643275, at *2 (citing *Elliott*, 792 S.W.2d at 855; *City of Houston*, 530 S.W.2d at 869). "The trial court is not authorized to enter an order of temporary injunction against a party before that party has had an opportunity to present its defenses and has rested its case." *See City of Austin*, 528 S.W.2d at 640 (setting aside order granting temporary injunction when court did not permit defendants to complete examination of witness or to present any evidence in their defense); *see also RRE VIP Borrower*, 2011 WL 1643275, at *2 ("[T]he trial court may not deprive a party of its right to offer any

7

evidence."); *Elliott*, 792 S.W.2d at 855 (holding that terminating temporary injunction hearing and entering temporary injunction against party before that party has had opportunity to present its defenses is abuse of discretion).

The hearing on the temporary injunction lasted for two hours and forty-five minutes, which included a fifteen minute recess. During that time counsel for Glover called Glover and Garcia. At 11:20 a.m., when it became clear to Appellants' counsel that there was insufficient time remaining for him to present his case, he stated:

> Your Honor, before I begin, just a quick—just a quick request. We've got 40 minutes to go before everybody said they have an obligation here. We've been going for over two hours with this witness [Glover]. I'll absolutely cross-examine this witness if that's the Court's wish. However, I'm also going to have—I'm obligated to request a continuance here because we have five defendants that were sued, five defendants that the injunction was requested against; and so far, we've got 39 minutes left. So I can't in good conscience put on five witnesses in 30 minutes.

Appellants' counsel then requested that the trial court reconvene the hearing as was earlier suggested, stating "earlier the Court stated that it was possible that we might need to come back, and that while that may be an inconvenience, that was a possibility." The trial court responded:

> Okay. So you can continue to argue about it or you can cross-examine the witness. The only way we could come back is we could come back at 1:30 for 30 minutes because I have another three hours of hearings starting at 2:00 pm. So you need to use this time that you have right now, and its within my discretion to decide whether we come back, or if the burden of proof has been met, if I want to go ahead and make a ruling on the application for the temporary injunction.

Appellants' counsel then began to cross-examine Glover when, after eleven minutes of cross-examination, the court advised him to "wrap it up." Appellants' counsel asked to be permitted to continue the cross-examination and to present his witnesses, which he had not had an

8

opportunity to do. The trial court responded that it had "broad discretion to limit the time as appropriate for hearings like this" and that "the applicant has already met the burden of proof necessary for the Court to grant the temporary injunction, so that is what I will do."

Thus, the trial court ended the temporary injunction hearing and granted Glover's application for a temporary injunction without allowing Appellants to complete their cross-examination of Glover or present their case-in-chief, witnesses, and evidence. This Court, along with several other courts of appeals, has found the granting of a temporary injunction under similar circumstances to be an abuse of discretion. *See RRE VIP Borrower*, 2011 WL 1643275, at *2 (holding that trial court abused its discretion by granting application for temporary injunction without allowing defendant opportunity to cross-examine expert witness and present its own witnesses and evidence); *Elliott*, 792 S.W.2d at 855 (holding that trial court abused its discretion by granting temporary injunction when trial court terminated hearing while applicant was cross-examining appellees' first witness—before appellees had rested and appellant had presented his defense); *Kramer Trading Corp. of Tex. v. Lyons*, 740 S.W. 2d 522, 523 (Tex. App.—Houston [1st Dist.] 1987, no writ) (holding that trial court abused its discretion by granting temporary injunction when trial court terminated hearing before appellee had rested his case and appellant had presented its defense); *City of Austin*, 528 S.W.2d at 640 (setting aside order granting temporary injunction when trial court terminated hearing during appellant's cross-examination of first witness without allowing appellant to present evidence of its defense); *Oertel v. Gulf States Abrasive Mfg.*, 429 S.W.2d 623, 623 (Tex. App.—Houston [1st Dist.] 1968, no writ) (reversing order granting temporary injunction when trial court did not permit appellants

9

to call witnesses and present their defense, even though they were permitted to cross-examine appellees' witnesses).[4]

Glover asserts that he presented evidence during the hearing sufficient to support the trial court's order granting a temporary injunction and, consequently, the trial court did not err in doing so. But the issue here is not whether Glover presented evidence sufficient to support the issuance of a temporary injunction. Rather, the issue is whether the trial court's doing so without permitting Appellants an opportunity to complete cross-examination of Glover's witness or to present any of their own witnesses or evidence constituted an abuse of discretion. As already discussed, this Court and many other courts of appeals have determined that it is.

Relatedly, although Glover is correct that the trial court has broad discretion to limit the time for a hearing on a temporary injunction, that discretion does not extend to denying the defendant an opportunity to put on its case-in-chief, including its witnesses and its evidence. Nor were Appellants required to file a written motion for continuance to preserve their right to present evidence at the hearing. A motion for continuance seeks to postpone or delay the trial of a case that has been set for trial, *see* Tex. R. Civ. P. 253, whereas in this case Appellants were seeking to go forward and present their evidence. We also reject Glover's contention that Appellants did not adequately preserve their complaint that the trial court could not issue a temporary injunction without permitting them to present any witnesses or evidence. The record

---

[4] In instances in which the parties are not making efficient use of their time or are monopolizing the time in a hearing with a limited time frame, the trial court may impose reasonable limitations on the presentation of evidence. *See O.C.T.G., L.L.P. v. Laguna Tubular Prods. Corp.*, No 14-13-00981-CV, 2014 WL 3512863, at *4 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) (mem. op.). The trial court also "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Tex. R. Evid. 611(a).

reflects that Appellants' counsel requested additional time when it became apparent that, rather than reconvene the hearing as suggested, the trial court was going to rule on the application for a temporary injunction without hearing any of Appellants' evidence. The trial court denied Appellants' request for additional time and concluded the hearing after advising the parties that the temporary injunction would issue.

We hold that the trial court abused its discretion by granting Glover's application for a temporary injunction without allowing Appellants the opportunity to complete their cross-examination of Glover's witness and present their own defense case-in-chief, witnesses, and evidence.[5] Accordingly, we sustain Appellants' first issue. Having sustained Appellants' first issue, we need not address their remaining two issues raising complaints about the form and scope of the trial court's temporary injunction.

## CONCLUSION

Having determined that the trial court abused its discretion by granting Glover's application for a temporary injunction, we vacate the temporary injunction, reverse the trial court's order, and remand the case to the trial court for further proceedings.

---

[5] In light of our ruling on the trial court's abuse of discretion, we need not consider whether Appellants made an offer of proof of the evidence they would have presented at the hearing. Under these circumstances, it is not necessary for the record to reflect what Appellant's evidence would have been. *See Oertel*, 429 S.W.2d at 624 (holding that when trial court refused to allow appellants to present any evidence at temporary injunction hearing and appellants duly objected to this action, there is no necessity for bill of exception and judgment must be reversed); *see also RRE VIP Borrower*, 2011 WL 1643275, at *3 n.6 (holding that when trial court failed to hear any evidence from defendant at temporary injunction hearing "it is not necessary for the record to reflect what [defendant's] evidence may have been").

11

_____

Thomas J. Baker, Justice

Before Justices Baker, Kelly, and Smith

Reversed and Remanded

Filed:   March 15, 2023